My name is Eugene Ramirez. I represent Deputy Kurt Messerschmidt and now Lieutenant Robert Lawrence in this appeal. I would ask that the opinion of the Ninth Circuit rendered early in this case be affirmed. Even when viewed in light most favorable to the plaintiffs, deputies can reasonably have deferred to the review of the search warrant both by a deputy district attorney and a magistrate judge who approved the warrant in this case. The issue in this case, I believe, is whether or not the deputies are entitled to qualified immunity based upon the search warrant that was served at the house of Menders. Do you agree that the – just to clarify, do you agree, then, that the warrant was overbroad? No, I do not, Your Honor, but for purposes of argument, let's assume that it is. I still think that the officers are entitled to qualified immunity. Okay. Just to be sure I understand that statement, because it's a little startling to me, frankly, let's assume that you had an affidavit that on its face was – there was no possible way that anybody could find there was probable cause. But nonetheless, they took it to a compliant judicial officer who issued a search warrant. And let's assume further that the person who prepared the affidavit was one of the officers involved and his supervisor, both of whom reviewed it. Are you saying that in those admittedly hypothetical circumstances that there would still be qualified immunity, notwithstanding the fact that there was no possibility that there was probable cause within the four walls of the affidavit? That was determined by either the reviewing deputy DA or the reviewing magistrate judge that there was no probable cause. And obviously – No, no, I understand. What I'm saying is let's assume for a moment that the reviewing people didn't look at it carefully. They were in a hurry and they had a lunch date or something and they just signed off on it. But the two officers in this case looking at it would know that on the four walls of the affidavit there was no possibility that there was probable cause. Would there then be qualified immunity? If the officer who prepared the affidavit and his immediate supervisor both knew that there was a lack of probable cause, then yes, I would agree that that warrant would be overbrought if that's what they knew. And so would you agree also that in this case, at least based upon his deposition testimony, Officer Messerschmidt made it very clear that he knew there was no gang-related activity involved here. Is that your understanding? He testified that it was not a gang-related crime against the girlfriend of Mr. Bellin. And he also knew that the girlfriend had specifically identified the weapon involved and it was very particular. She had even given a picture. Is that correct? That is correct. So what we're really talking about here, he prepared an affidavit. He knew what was involved there. So with respect to Messerschmidt, let's leave him alone and deal with him alone for the moment. If what he stated did not constitute probable cause, how could he be entitled to qualified immunity, regardless of what happened up the line? Are we assuming that that is all the knowledge that Deputy Messerschmidt put in the search warrant? Yeah, well, that's what the law says, isn't it, that it's within the four walls of the affidavit. Isn't that all we can rely upon? Well, that and also because we're looking at qualified immunity, and it's a reasonable standard, we need to look at what Deputy Messerschmidt knew at the time that he presented that warrant for review. And there's a few things that he knew. One is, if you look at the excerpt of record number 115, that's the face page of the search warrant. It just wasn't a case where the search warrant says, I approve, go forward and get the judge approved. This one actually says, reviewed for PC, probable cause by Deputy D.A. Janet Wilson. This is a situation where I think everyone seems to have gone above and beyond their duty. Messerschmidt didn't just hurry up and sign this warrant and then go serve it after having a judge approve it. Instead, he took it to a sergeant. The sergeant, who is more familiar with this, took a look at it, determined there was sufficient probable cause contained within the four corners, and then took it to the lieutenant, further higher up the chain of command. Even after that was done, he then went to Deputy D.A. Janet Wilson, who said, I specifically looked at this for the issues of probable cause. I determined that they are present. Now you may go to the judge. The judge, and there is absolutely no indication whatsoever that this was merely a compliant judge. There's been no argument made such that that would be the case. So in this case, we have to assume that the judge, the magistrate, did his job in reviewing this warrant. Kennedy. Does the record show that going to three different people before the judge or two different people before the judge is the normal pattern in the Department? It is not the normal pattern in the Department. Mr. Ramirez, I'm sympathetic with the point that you make about getting clearance from other trained lawyers. But how do you get beyond Malley and KRL? I don't think I need to get beyond Malley and KRL, Your Honor, because those cases are directly on point. Malley talks about qualified immunity protects everybody, but the plainly incompetent are the ones who knowingly violate someone's constitutional rights. We don't have that situation present here because of the steps that Deputy Messerschmidt took to ensure that everybody's rights would be protected by going to a trained deputy district attorney, by having two supervisors in the chain of command review this before going to the judge. And by all accounts, the judge did his job in reviewing the warrant to make sure that  So I think both of those. What's your best argument for including a request to search for gang affiliation in the application for the search warrant? If you read the affidavit clearly regarding the gang paraphernalia, it also says for that gang paraphernalia, which would also show evidence that may be involved in this particular case. So, for example, they find pictures of him and his gang regalia holding that same weapon. That would tend to produce more evidence. Maybe this shows evidence of Mr. Bowen committing other crimes in those photographs, which gang members often keep in their storage chests. And again, looking at the record, and again, I would point the courts to excerpts of record 131 and beyond, that's of the rap sheets. And if you notice the date of all the rap sheets and all the databases that were reviewed by Deputy Messerschmidt before he prepared the affidavit, he did this all on October 20th, immediately after the assault upon Ms. Kelly. So prior to applying for the warrant, he had reviewed all the database on Mr. Bowen and learned about his violent nature and the fact that he was a three-strike candidate, the fact that he was on probation, which means he could not possess any weapon whatsoever, but yet he limited the search warrant to only those weapons dealing with firearms. So, again, it looks like Deputy Messerschmidt went to that extra mile to limit it. And again, it's not to any and all gang memorabilia. End of story. No, he limited it to the Mona Park Crips, of which all the data came back that Mr. Bowen was a member of the Mona Park Crips. Alito, you would have a much stronger argument if Deputy Messerschmidt had put all that information in the affidavit. Did he draft this himself, or did the district attorney draft it for him? Deputy Messerschmidt drafted the declaration in the affidavit himself, Your Honor. And wouldn't you agree that he should have put all of that information in the declaration so that it would have been clear to the issuing judge? In hindsight, I'm going to go back and teach all the deputies. You put everything in there. But the question is, did we put everything in there, or did we put sufficient information in there to establish probable cause? And when you ask that question, yes. If you look at the totality of the circumstances here, Deputy Messerschmidt put everything that needed in there. Can you look with me at attachment 2 to the warrant that you have in front of me? Which attachment was that, Your Honor? 2. The one that says, talks about firearms. One paragraph talks about firearms, and the second one talks about the gangsters. Yes, Your Honor. Now, explain to me, if you are Officer Messerschmidt, how do you get paragraph 2 into this warrant? What possibly justifies your sticking this in to begin with? I believe because the investigation revealed that Mr. Bowen was at Mona Park Crip, that became relevant, because when they're going to look for evidence of crimes, either the particular assault upon Ms. Shelley or any other crime that may be committed by Mr. Bowen. He was also a felon, wasn't he? Yes. Well, wouldn't he be committing a further felony if he had possession of a firearm?  He was looking at a third-strike conviction, Your Honor. And also because of the fact that he was on probation and had previously been convicted of a felon in possession of a firearm. All of that becomes relevant. I'm asking you about the second paragraph, not the first paragraph dealing with guns. No. This all tied in, Your Honor. No, no. I understand. But it's not a felony to be a member of a gang if you are a felon, right? Well, it can be. Again, the part of the summary probation terms and conditions that you cannot associate with known gang members. Parts of his probation could have been the same. So there are crimes, in fact, of being a gang member. Is it in the warrant? Do we have anything in the record to suggest that he was suspected of committing a crime by being a member of a gang? In and of itself, there is nothing in the record with that regard. I'm sorry. What does in and of itself mean? There is nothing in the record that says that this was a gang-related crime. What you're saying is no, right? That this was not a gang-related crime. That is correct. Yes or no? Now that I'm confused. Was there any evidence in the record, any evidence in the warrant, any of the evidence that Officer Messerschmidt had, that would have made gang membership illegal, either because of his violent probation or because there's some statute in California I'm not aware of or something of that sort? Was there anything at all that would have made gang membership or association with gang members illegal for him? That was not written in the warrant affidavit, Your Honor. Okay. So what is it that justifies you, let's say you are now in Officer Messerschmidt's shoes, putting this into the warrant, this paragraph into the warrant? Assuming I'm Kurt Messerschmidt, I'm going to say because I am a member of the Operation State Streets gang unit, everything I do and all the crimes I investigate are somehow or another related to gangs. And in my investigation, I'm going to look for that paraphernalia, those pictures which might depict my suspect holding a similar weapon or another weapon committing a crime. Anything that would help me tie him in to not only this crime but perhaps other crimes, I think it's my duty to go out and investigate and see if I can locate that evidence. Other crimes? Why is it other crimes? I don't understand that. Why can't – this was a domestic assault with a specific weapon. That's correct. He's going into somebody else's house. It's a third party's house. So he's going to make it as broad as possible, which is going to give the SWAT team the authority to go throughout the house looking for all sorts of stuff. If you want to say I'm looking for pictures of the gun, whether it's in gang photos or anything else, the photo that's in the record doesn't show him in gang paraphernalia as far as I can tell, then that might be relevant. But basically what you're saying is the officer, because he works with gangs, can draft an affidavit for a search warrant that opens up the front door. He's got probable cause facially, as the district court found. And once he's in, the SWAT team can go through the entire house looking for anything, evidence of ownership, evidence of control, nothing tied to identifying and locating and proving ownership just of the gun at issue. How is that consistent with the requirements of both particularity and not being overbrought? Well, actually, Your Honor, well, the SWAT team is not empowered to search for anything. A SWAT team goes in and makes sure the house is cleared of any weapons and there's no armed people in there. Then they leave. Then the gang investigators come in and they begin their search, and they're going to look consistent with this warrant. Now, responding to your question about paragraph 2, I believe that anyone whose house is being invaded, I doubt that they make those subtle distinctions. I just want to make sure, Your Honor, because each of you ---- Well, let me ask you, you gave an answer to my question about paragraph 2, and I asked you, assuming you're Officer Messerschmidt, and this is you explaining to me how Officer Messerschmidt would think about it. Now, I just want to make sure, because I plan to quote what you say, whatever I write in this case, and attribute it to you. Is this a position of your position or the position of the city of Los Angeles that this is a justification for searching in a search warrant? What you explained, we investigate gangs, and therefore, if I'm a gang investigator, you know, I'm paraphrasing what you said, but I plan to quote it verbatim. I just want to make sure that what you were telling me is not what some, you know, uneducated policeman, and by uneducated, I mean, you know, not somebody who went to law school, would say. But that is, in fact, you think that's a proper justification for a search warrant. Is that your view? I believe it is. It is a fact, Your Honor. That you can, if you are a gang investigator, then you can go in. If you think somebody may be associated with gangs, you can put in a warrant. Something that says go in and look for evidence of gang activity, even though the crime does not involve, the crime for which you have probable cause does not involve gang activity. That's your view. In this case, yes, Your Honor. Well, let me ask you this. You sought the right to look for stuff that would tie this guy to that premises, right? Correct. Wouldn't a gang, if you found his gang membership card or his gang T-shirt or a thing, wouldn't that tie him to the premises? It could. If the picture showed him outside the house in his gang paraphernalia with some of his associates, that would certainly tie him to the house. If you had his, if you found his secret decoder ring that the issue in the gang or whatever it is, that would tie him to the place, just as if you found a utility bill, wouldn't it? It certainly would help, Your Honor. Yes. Why would that be relevant, tying him to the place, be relevant to the crime for which he's being investigated? Because we believe that may have been a place where he could have stored the items of evidence. Well, it would be relevant if you found the shotgun, right? I mean, if he lived there and you didn't find the shotgun, but it would be relevant if you found some sort of residency and you found the shotgun. That would be coming at the trial, right? That is correct, Your Honor. Well, let me ask you on the, this was also authorized for night service, which is, to my understanding, fairly unusual. Most warrants are not served at night. Do you think that that in any, how does that cut in terms of evaluating the review that was given? Does that require additional review? Yes. Because there is a separate box on the search warrant face page that requires the judge to check off whether or not a nighttime service is authorized. And they're certainly going to ask why are you going to come inside those hours if I think it's 10 p.m. to 6 a.m. and destroy, and disturb people as they're sleeping. Again, based upon the violent nature of Mr. Bowen's, not only his crime for which he was being sought, but his past history of violent crimes. So what separate review is required if it's a nighttime warrant? Pardon me, Your Honor? The question was, is there a separate review required? And you said yes. And I'm asking you, what separate review is required if it's a nighttime warrant? The judge and both the DA are going to ask the deputy, why is it necessary that this be served at nighttime as opposed to middle of the night? So how does that affect the analysis of the specificity of the warrant? Because it's going to allow Deputy Messerschmidt to inform both the judge and the district attorney when asked what his background investigation revealed, all the criminal convictions of Mr. Bowen, the crimes which involved weapons, particularly firearms that was involved in on Mr. Bowen. This particular crime where he shot four times and his girlfriend tried to throw over a balcony all led to the conclusion that he was a dangerous individual and it was safer for the deputies to serve the warrant late at night and try to get a surprise and take the suspect into custody, all that happened to use deadly force. Was this an arrest warrant? There was a Ramey warrant and a search warrant, Your Honor. It was both. Yes. But bringing you back to Malley for a minute and the question Judge Reimer asked, Malley says that review by a magistrate is not enough to shield an officer, that the officer has an individual responsibility to identify probable cause. Are you looking for a rule that notwithstanding Malley, if an officer's application for a warrant is reviewed internally by a number of people, that that should be enough so that a reasonable officer in his situation could rely on it and he would be entitled to qualified immunity? That might be a difficult rule to work, Your Honor, because the Sheriff's Department for L.A. County has 10,000 deputies strong, so they have the ability to go up the chain of command, but imagine a smaller department up in Bishop, California, where they'd only have seven officers in the entire department. That review process may not be possible, so I'd be hesitant to ask for such a rule that would put an onus on smaller agencies, whereas larger agencies can and do do that. The other situation that arises is that the district attorney's office has limited resources as well, and the deputies and law enforcement officers realize they can't run to every D.A. on every warrant. They have to pick and choose the warrants, and this is one that they felt was sufficient. The question's on the other side, not that it's a requirement, but if that, in fact, took place, notwithstanding Malley, should the officer be immunized? Should he be entitled to qualified immunity? Absolutely, because once the judge and the D.A. determined that probable cause was present, as Malley said in some of the other cases, KRL, it's not for the deputy at that point to second-guess the magistrate's determination of probable cause, because the magistrate presumably is much more educated in the areas of search and seizure than the deputy. Well, I think Malley actually said that the magistrate's determination wasn't enough to immunize the officer. So I was trying to understand if you were distinguishing Malley on the grounds that this was an internal review, and if so, how do you make that distinction? I think the Fourth Amendment requires the deputies to follow the law the best they can. They are to review that warrant before they take it to the magistrate judge, and hopefully the magistrate judge will do their job in reviewing that warrant. Here, deputy Messerschmitt went above and beyond and went through this chain of command and a deputy D.A. I think what you're asking is should there be a blanket rule that that always be done? And I say in some agencies it can and will be done. In smaller agencies, they may not be able to meet that rule if such a rule were to be prepared. But what you're telling us is if they came to you today with this warrant, you would say fine. If you were the D.A. that they came to, they went through this process and they came to you, knowing what you know today, you'd say, yeah, that's fine, given the answer you gave me to my question earlier. Knowing what I know today, I'd probably say, let's add a little more, but at the time that the warrant was applied for in 2003, I would have said, yes, this is a sufficient warrant based on what you have told me. Go serve it after you get permission from the judge. I'm sorry. What do you have you learned today that you – that changes your view? Well, I've read Judge Akuta's dissent. I've read – and I've taken that to heart, and I'll certainly – But you don't want us to adopt Judge Akuta's dissent. No, I do not. So you disagree with us. So, you know, your view is that this is okay. Well, why don't you make the argument that Judge Callahan and Judge Fernandez saw it differently, so if two circuit judges could see it differently from a third, how do we expect the officer to know? I'm not asking about the office. I'm asking about you. I would have approved the warrant. I'm asking you as the DA. I mean, we've got these multi-level processes, and you say, oh, he went and did this and did this and did this, but I don't get a lot of comfort from you. To me, it sounds like if they came to you today, you'd say, oh, but for Judge Akuta, who hopefully will get outvoted again in your view, this was fine. This was fine. You don't see anything wrong with this warrant. I believe this warrant – This is what worries me, really. Now, if you came to me and said, gee, boy, they really screwed up. Boy, I don't know how they could have gotten this so wrong. But, you know, then it would be in a different ball. But you – what you're saying is this is fine, and you stick by that. Yes. The deputies did not screw up, Your Honor. They went above and beyond. No, I'm talking about the deputy DA, not the deputy sheriff. I don't think the deputy DA screwed up at all. Well, the deputy DA, right? Yes, Janet Wilson. You think she did okay? I think she did her job and gave good advice to the deputies in which they could rely upon. What concerns me in this, we've sort of gotten off on where different opinions in the past were. The concern that I have is the permission to search for indicia of gang activity. The crime that they were investigating had nothing to do with gangs. It was domestic violence. And I don't understand how, beyond evidence of the specific crime and firearms, perhaps beyond the specific firearm, I don't understand why the mere fact of gang membership permits that broader search when there's no evidence of any other specific crime. And that's the question that I need for you to answer if I'm going to come to your side of the argument on this. I believe because of the fact that Mr. Bowen was a member of the Monopart Crips. So what? That's the crime was not a gang-related crime, as you yourself said a few minutes ago. But its history is based upon its gang association. There's even evidence in the record that there were other members of the Melender household who were believed to be part of the Monopart Crips as well. Well, again, where is the probable cause to believe that any specific crime had been committed other than just a general belief that gangs are bad and they do criminal things generally? So any time you have a gang member and any excuse at all, if someone had been speeding and you were looking for their car, then you could say, well, they're a gang member, so I'm going to rummage through their house and look for things about gangs. Where's the nexus? Where's the connection? Because if they found the pictures of him and his gang paraphernalia holding that same weapon, that would be additional evidence. Well, I know that, but that's basically saying that any time a gang member commits any crime, no matter how unrelated to the gang, then you can just go on a fishing expedition to see what you can find out about the gang. In fact, are you not making an argument that a general warrant is just fine? No. I believe this was not just a general warrant. Well, but you are, because what if he had a vacation photo with him and holding the same gun? There he is with his friends down in Baja holding a gun. That would prove, too. So why not vacation photos? If any pictures of him holding the gun is proof, then... Because it's more likely than not that he would be in his gang paraphernalia using that gun as opposed to being on a family vacation in Baja. Mr. Ramirez, is it the weapon itself, which you're trying to argue establishes the nexus to gang activity, that nobody carries sawed-off shotguns for any legitimate sporting or hunting purpose? It's a weapon of criminal street gangs. That is correct. Well, then why didn't he say that in the affidavit? That's what's missing here. In hindsight, perhaps he should have. I think the question is did he put sufficient information in there. You mean it's illegal for people who are not a street gang to use that weapon? It's illegal to have a sawed-off shotgun. You're not allowed to use it? It's illegal to have a sawed-off shotgun, Your Honor. Any barrel less than 19 1⁄2 inches away. But is that uniquely a street gang weapon? It is because it's easily transportable and concealable under a baggy clothing to use a sawed-off shotgun. So your representation here is that sawed-off shotguns are used only by street gang members? They're not only used by street gang members. But since I don't have much experience with organized crime other than some gangs, I can only base it upon what I know and what I've been told by deputies. What I don't understand from your argument is you keep reverting back to the theory that if the picture showed a gun, and I do understand that. I mean, if I'm sitting here as an officer, I'm going to want evidence that would show that he had possession and control of this weapon because we know what weapon we're looking for. But that's not the way the search warrant is justified entirely or, as Judge Tolman pointed out, or the way the parameters are drafted. It's essentially looking. They could have gang photos throughout the entire house that never have a weapon in them, and that's fully, under your view, within the scope. Now, what evidence would that be other than that he was a gang member? Well, it also would be a violation of his probation terms and conditions. If there's no weapon in the picture? If he was told not to associate with other gang members and they found those and they were recently taken, that would all go. What's that got to do with the crime of investigation in somebody else's house? Well, if he's committing other crimes, I think the officers have a right to arrest him for that as well. So they could look for any evidence of any crime that he might have committed, even if it was, you know. For example, is there any evidence that there's stolen goods in the house, like shoplifting, contraband? So that's your idea, that once they can, because he uses a gun in the street against his girlfriend, he can then open the door to somebody's house for everybody to go in and search through the entire house on a blanket investigation to find evidence of any crime that this fellow may have committed. Well, I don't think it's a blanket investigation. He's there with a valid warrant, but if he sees fruits of other crimes, then yes. I want to ask you about that. But let's just, if there's a lack of probable cause to search for all firearms and gang affiliation, does that invalidate the warrant? No. I think they still had a reason to be there looking for either the weapon in question or for himself, Mr. Bowen. I'd like to reserve at least two minutes for rebuttal on that. There was a gun seized. There was a gun found during the search. Yes. What happened to that gun? I believe it was ultimately returned to the family. Well, I didn't mean ultimately. What happened to the gun when they found it? Well, they took it into evidence to try to figure out who it belonged to. So it was seized? Yes, it was. Okay. And then ultimately it was returned. Right. And they also found .45 caliber ammunition, but no gun for that to go with. And they also found the letter from the State of California to Mr. Bowen talking about a medical appointment he was supposed to have had in June. And at this point, I'd like to reserve my last one minute. Ammunition was also seized? Pardon me? .45 caliber ammo was also seized? Yes, it was. Well, he would, as a convicted felon, that would also be a crime if they can tie the ammunition to him, right? Yes. Okay. At this point, I'll reserve my last one minute. Twenty seconds. Thank you. You got it. Okay. We'll hear from the Millenders. May it please the Court. Good morning. My name is Olu Orange. I represent the Millenders in this matter. I'd like to start by clarifying a few factual issues. First of all, as far as the record goes, particularly the affidavit in support of the warrant, there was no evidence of any probation or parole that Mr. Bowen was on, no history of convictions or gang activity convictions. None of these things were present in the warrant. None of them were submitted to a magistrate to be a part of the determination that was ultimately made. But if we're looking at this both from an objective and a subjective standpoint, why is that not relevant, what the officer knows at the time he executes the warrant? It's certainly relevant, is it not, while he's executing the warrant, if he uncovers evidence in plain view, which the warrant gives him a right to be there to look at, he can then seize something that he knows, based on what he knows about Mr. Bowen, it's illegal for him to possess, correct? Certainly. But I guess what I'm attempting to articulate is that this issue of probation or parole or being in possession of weapons is something that has come up as a function of this appellate process. It was never part of the motions for summary judgment argument. It was never articulated in any affidavit. It was never articulated in any portion of the record that I've reviewed up until this point. But isn't it relevant to the second prong of sautier as to whether or not a reasonable officer knowing what this detective knew at the time would have understood that this warrant was overbroad and that it was illegal for him to be searching for all these other things? Yes, it is relevant, but it's relevant in the context we would contend of Cardwell, U.S. v. Cardwell, which was a 1982 case out of his circuit, wherein the court articulated the position that to the extent that more specific descriptions are possible, that broad classifications or general classifications in a warrant are unacceptable. And what the officer knew at the time objectively was that it was a black pistol grip sawed-off shotgun, and what he knew subjectively, meaning he didn't put it in the affidavit, was that this was not gang-related. Counsel, just so I understand your argument, is it your argument that there was never anything placed in the record, in the district court, that this officer was aware of any conditions of probation? Yes. Can you tell me, is it your position that if the warrant is invalid, the police officer cannot get immunity? Yes. Well, then, what, immunity is coextensive with the invalidity of the warrant as you see it? Yes, but it's a relative analysis, and may I explain? Sure. Okay. Essentially, if it is so invalid, and this is Malley, from Malley v. Briggs, U.S. Supreme Court case, 1986, penned by Justice White and dissent by Rehnquist, but if it is so invalid that on its face, no officer would reasonably believe that he should submit it for further review in the first place, then he does not get immunity. Okay, so we stipulate that the warrant was invalid. Let's say for the sake of our discussion, we'll agree that the warrant called for all guns, but it should have only called for one gun. Okay? Yes. Why wouldn't an officer be entitled to, why wouldn't it be a reasonable mistake on the officer's part to think, if this guy's a felon, he can't be in possession of any gun? So, even though it's a mistake because the warrant, the application didn't cover that, in his mind, it's a reasonable mistake, which is what immunity is designed to protect. Well, I think what we have to look at is also the process of the search. At the point that the officers were searching the third party, the innocent third party's house, at some point they made a determination that this man that they were supposedly looking for was not there and this was not his residence. They also made determinations ostensibly as to who was in possession and control of the premises and whether or not there was any weapon there that could reasonably be said to be in possession by this person. He wasn't there at the time. Well, except for you have to, but the victim of the shooting had told the officers that that was the place that he stayed. So they had that information and they did find. But the question that I have, is the totality of the circumstances standard that's set out in the Supreme Court's opinion of Illinois v. Gates applicable to this case? I would say that the totality of the circumstances standard that's set forth is applicable to the extent, as this Court articulated in U.S. v. Cardwell, a crucial factor to be considered is the information available to the government. And the information available to the government is part of the totality of the circumstances. The information available to the government in this case was that it was a black pistol grip sawed-off shotgun. But nonetheless, because apparently firearms are contraband, they seized a rifle stock, long barrel shotgun. Well, what if she hadn't, you know, but what if sometimes, what if I told, said it was, you know, it was a Beretta or something like that, but it turns out I'm wrong. It's a Smith & Wesson or something along those lines. I mean, do, you know, is it possible that someone can give a wrong description to an officer? It's possible, but a generic classification, and I'm quoting from Cardwell, generic classifications in a warrant are acceptable only when a more precise description is not possible. So with your example, if a more precise description was possible, say, for example, a Beretta 92 subcompact as opposed to a Smith & Wesson .45 caliber long barrel, then when an officer goes in to search for and seize a weapon, knowing exactly what the weapon is, he can't do an exploratory rummaging throughout a third party's house and seize a weapon other than the weapon he knows to be the case. And if I may. You keep saying third party house, but the district court found, and you have not challenged on appeal, that there was probable cause for the issuance of the warrant to conduct a search at this location because the officer reasonably believed that Mr. Bowen was staying here. So it isn't really a third party house in the mind of the officer at that point, is it? Well, actually, this is not our appeal. And when we have the opportunity to appeal the determination as to whether or not. Well, you didn't cross-appeal on that issue. We submitted a request to be able to file an interlocutory appeal, and we were denied by the district judge. So we will when we can. However, as far as the officer going in and having the subjective knowledge that it's one thing and not putting in the affidavit that knowledge and seizing things beyond what he knows to be the case. Wouldn't you concede that if the officer had put in Mr. Bowen is a convicted felon and I want a warrant to search for firearms, including but not limited to a sawed-off shotgun with a black pistol grip, that that warrant would be valid? It could be valid, but that's not what was put in the affidavit. Did they seize any gang material? Absolutely not. Did they look anywhere in the house for gang material that they wouldn't have been able to look just for the sawed-off shotgun? Our consensus is yes, and I'll explain why. If you look at paragraph two of attachment two, and you look at every sentence of that portion that specifies or sets forth the gang indicia search, only the last sentence is limited to Mr. Bowen. Every sentence other than the last sentence, when you consider them separately or together, is essentially setting forth a request and an authorization for these officers to search for indicia of gang membership. No, that's not my question. My question was did they open any drawers or any closets or anything else looking for gang stuff that they wouldn't have been entitled to look at for the sawed-off shotgun? Our position is yes. Yeah, but they had resident indicia, too. Indicia is about the size of pictures, too. And that's what I'm saying. The thing is is that because they could look anywhere for anything with regard to any one, we believe they looked everywhere for things with regard to every one. Did they look into envelopes, for instance? Yes. You couldn't find a gun in an envelope, for instance. Which is how they found the letter from the Department of, I think, Social Services from the State of California. There would be no gun in there. But they were authorized to look for paperwork related to the possession of the firearms, were they not? So that would have allowed them to look in the smallest of spaces. Yes, it would have, but our contention is, of course, that they should have only been looking for a black pistol grip sawed-off shotgun. And any paperwork related to who owns it. That's certainly appropriate within the scope of an otherwise valid warrant, isn't it? The courts have held that sometimes those terms are appropriate. Our position is that, in this case, there was no such limitation. Thus, it was inappropriate. I want to explore that. Judge Pregerson said that, which you couldn't appeal on the interlocutory, but why isn't the warrant, why is the warrant not valid under the totality of the circumstances that we've talked about in light of the fact that the district court upheld that the nighttime service was okay, the search for Bowen was okay, the search for the sawed-off shotgun was okay, and the evidence of ownership of the residence was okay? So why under the totality of the circumstance isn't the warrant still valid, even if it was overbroad? The warrant is invalid under the totality of the circumstances on its face, because the decisional law clearly established of this Court has been, since at least 1982, that generic classifications are unacceptable when a more particular or precise, to be exact, description is possible. And in this case, a more precise description was clearly possible. He had a picture. In addition to a picture and a testimony of this witness, he had a testimony of an uninvolved witness who also said black pistol grip sawed-off shotgun. A gentleman by the name of Mr. Jerry Floyd said that to him. That's why, at least as to the firearm, it was clearly invalid. As to the gang indicia, it was also clearly invalid because in 1986, U.S. v. Spilotro, the Court set forth very clearly in an opinion penned by now Justice Kennedy that every part of the search has to be supported by probable cause. Search for gang indicia was not supported by probable cause. And that's actually the very point I wanted to follow up before. I understood you to say that at some point in the search it became clear to the officers that Mr. Bowen was not there, number two, that he didn't own the house. Do I understand by that that you are saying that thereafter they had no ability to search beyond that for anything even in plain view? Or what does that mean for our purposes? For our purposes, what I'm saying is that at some point it became clear to the officers that the man they were looking for was not at this third party's house, that the gun they were looking for was not at this third party's house. As a matter of fact, in Officer Messerschmidt's declaration, he says the weapon we were looking for, the primary weapon we did not find. But further to Judge Tallman's point, they had the right to search for paperwork about the gun. Even though he wasn't there, he didn't own the house, they still had an ability and the right to search for paperwork about the ownership of that particular gun, did they not? The district court has made the determination that they had the right to search for paperwork about the ownership of the premises in general, and so I would say yes. But you're not saying categorically that at some magical point, which I don't really see in the record, let's just say there was one, they knew he wasn't there and they knew that he didn't own the house, that that was the end of the search? You're not taking that position? Not taking that position, but what I am saying simply is that in executing the search, at some point they had to know he wasn't there and that wasn't his house. Doesn't a shotgun have to be altered to become a pistol grip shotgun? Is this a weapon that's manufactured that way? My understanding is that there can be shotguns that are sold with pistol grips and then sometimes people file down or saw down the rifle stock to create a pistol grip. If it's sawed off to create a pistol grip or a short barrel from sawing, you can't, like, make it long again. I'm just curious as to whether there would be any registration or certification that would identify a weapon that had been altered. What kind of information could you get that would identify a weapon that's been altered? From what I've seen generally, when people alter weapons in that fashion and make them illegal, they also file off whatever serial or registration. Well, but they could have been legal at some point. Yes. And it could show, you know. When you create a sawed-off shotgun by just sawing a long barrel off to less than 19 1⁄2 inches. You can, but you can't recreate the long barrel from the short barrel. Unless you change the barrel, and there are shotguns that permit you to do that. There are some, but this shotgun in this case was a long barrel with rifle stock, and what was called for the seizure of was the sawed-off with the pistol grip. Mr. Orridge, can you give me an example of where a warrant would lack probable cause  Can I ask if your question also includes a situation where they did actually talk to a D.A. and a judge, and so the lack of probable cause and speaking with the D.A. Answer it however you. Okay. U.S. versus Cal, 1995 opinion penned by this court. In that situation, what the court articulated was there is one particular situation where an officer with a clearly invalid warrant that lacks probable cause can talk with the D.A. and a judge and end up with qualified immunity. And that situation is where the officer points out to the D.A. and the judge, hey, look, I have a problem with this. There's a lack of probable cause here. And the judge says to the officer, regardless of what you see as the problem, I'm giving you specific assurances that this warrant can indeed be acted upon. That's the one scenario. That's the only scenario in the whole world where a police officer would get qualified immunity for an invalid, for serving an invalid warrant. Or if the entire establishment is permeated with fraud. That's the other circumstance. Can I get back to the question of what the officers knew or are charged with knowing or entitled to know? At the time they asked Judge Rawlinson's question about whether the officer, Mr. Schmidt, knew that the suspect was on probation. And he said, no, there's no evidence in the record that he was on probation. Is there evidence on the record as to whether he knew that he was a felon? There's nothing in the affidavit as to any convictions for felons. In the declaration of Officer Measure Schmidt, paragraph 25, Officer Measure Schmidt says that Mr. Bowen did indeed have felony convictions. That was not set forth in the affidavit. That was in the affidavit once the case got to district court. I'm sorry? That was in district court. That was a piece of paper, a document created in district court. Yes. It was a declaration in support of the motion of summary judgment. Now, are officers, and we generally say that it doesn't really matter what a, for all sorts of purposes, what an officer knows. For example, you have a situation where there are two officers on the job and one officer knows one thing and another officer knows something else. We attribute to both officers the knowledge of the other for determinations of whether a search is reasonable, for example. You don't look at what's actually in the mind of the officer, you look at what the government knew. Now, I take it the knowledge about whether the suspect was a felon or whether he was a probationer, this is something that was known in some sense to the county, to the sheriff's office. It's something that is in the records, public records, that they could look up. Why isn't Messerschmidt entitled to have that knowledge, even though he subjectively may not have known it? Well, Your Honor, because if each officer in the field is entitled to rely on all the knowledge that the county of Los Angeles Sheriff's Department has in procuring and executing search warrants, then no officer would ever have to put in the affidavit for determination by a neutral and detached magistrate the information that he or she is actually relying upon at the time. That's why. In a situation like this, there would be no reason. So what you're saying is we may assume that Messerschmidt had the knowledge or could be attributed the knowledge, but if he doesn't put it in the warrant, then it doesn't count. He has not done his job. Is there any place else besides excerpt of record? I guess it's SEB 23, which is page 3 of his affidavit. I'm referring specifically to lines 19 through 22, where he references an extensive background search on the suspect by utilizing departmental records, state computer records, and other police agency records that we might look to see what the detective knew about his criminal history. In the affidavit or in the record period? Well, let's start with the affidavit. That's the only place I could find it. Is there any other? Your Honor, on page 4, line 3, it mentions the Cal Gang database, but it doesn't say anything about convictions. And that would be my point as far as the affidavit. There is no mention of a conviction. I mean, you can't end up on parole or probation unless there's a conviction. There's no mention of parole or probation in the affidavit either. But how about his deposition testimony? Was he asked about what the CCH records search revealed? I do not have a recollection at this point as to that portion of the deposition testimony. I know he was asked about whether he had any reason to believe that this was a gang crime, and he said that he did not in the deposition. No, I was asking specifically about what the officer knew about his prior criminal history. I don't know. Was there any evidence in the record that he was actually on parole or probation at the time of the search? No. There was evidence that he had a conviction for an assault with a deadly weapon, I believe, perhaps 13 to 15 years prior to this incident. My feeling would be that probation or parole long expired if he got probation or parole for that incident prior to this incident. There was a question that was posed during Mr. Ramirez's argument by Judge Reimer, I believe, as to how the officer gets beyond Malley. And our contention is that the officer does not get beyond Malley. The question posed in Malley best addresses this qualified immunity issue. The question, and I quote, is the question in this case is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. Malley said that we find it reasonable to require the officer applying for the warrant to minimize this danger, and the danger they were referring to was the danger of the magistrate's failure by exercising reasonable professional judgment. Well, what about the additional layers of review internally? So he wasn't just relying on the magistrate who may be overworked or make a mistake, but there were other people within the agency who reviewed and said it's okay. So does that distinguish this case from Malley, so that a reasonable officer could at least rely on the deputy district attorney's sign-off? I would say no, and the reason is because this court in U.S. v. Cal, 1995 opinion, in U.S. v. Cal, there were two assistant U.S. attorneys and a magistrate that the officer relied upon prior to executing the warrant. And in Cal, the court said that the warrant was so facially invalid and lacked probable cause that an officer should have known, should have exercised his independent reasonable judgment and not gone forward with it. And the evidence was ultimately suppressed. Is there anything wrong with a policy that gives a pass to two lawyers and the judge but tags the police officer because all the legally trained people were wrong? Well, the Supreme Court in Malley addressed that exact question also. The Supreme Court said, and I quote, notwithstanding petitioner's protestations, the rule we adopt in no way requires the police officer to assume a role even more skilled than the magistrate. So we protect our own, but we don't protect the police. Is that how I'm to read that opinion? No. I think what it says is that the officer cannot suspend his independent professional judgment because he lays a warrant and affidavit package at the feet of a magistrate or at the feet of a prosecutor. He still has to do his job. Isn't it a little bit of a finer gloss, though, when you're talking about there's probable cause to search for a shotgun? You know, there's probable cause to search that residence for indicia of residency. But the problem is not all firearms, not gang indicia, even though we do know that he's a gang member and all of those things. So, I mean, it seems to me that we're really talking over breath is really a very typically legal issue as opposed to, you know, I mean, the officer had probable cause to this guy committed the crime. He just shot at this woman through the car. You know, I mean, and if it is a shotgun, he has information of that residence, and there's probable cause to look for him in that residence, an indicia of the weapon and that. But it's too broad. But then a judge, you know, a judge and a DA aren't saying it is too broad. I don't see how that's plainly incompetent. Your Honor, I would say it's plainly incompetent because the rule is a simple rule. And the simple rule is that, again, every part of the search must be supported by probable cause, and that would be the support aspect. And the limitation aspect is that you can search for nothing more than you have probable cause to support. So it's a simple rule. The officer had black pistol grip sawed-off shotgun and a picture of the gentleman holding it, and he went after every firearm. It's a mismatch. Anyone would see it. And what the court has said about mismatches that anyone would see on the face of a warrant, particularly when it involves overbreath, where it involves general classifications, when a more specific description is possible, the court used the word possible, then the warrant is facially invalid. And a specific description was possible here. He knew. He knew, but he went forward anyway. I think one of the problems inherent in this case that's been percolating is that if I'm sitting as the officer and I'm looking down the road to how I'm going to prove up that this weapon that I'm searching for in this house is the weapon that was used, is I, yes, I want to retrieve the weapon, but I'm also going to want to retrieve any evidence that would show, A, if I don't find the weapon, that the weapon was possessed by, you know, it is the same guy, different picture, same weapon, or evidence of ownership, as you've said, acknowledged the district court found. So it's not just the weapon. It's not a targeted search for a physical weapon. It's also for anything that would tend to prove that he had that weapon. And so once you start shading away from that into records of evidence and pictures and everything, now I acknowledge that there is, as in my question before counsel for the county, was, well, if you're looking for a photo, you can say a photo that will tend to show that he owned this gun. But are you limiting your argument that all that they could do was to find the weapon, and if they don't find the weapon, then they're done? My contention would be that all the other accoutrements that they searched for with regard to all weapons, that search is invalid, just as invalid as the search for all weapons. If they'd gone in looking for the weapon and other things or implements relative to the weapon, then those searches for those things we would contend may be valid. However, they didn't. I thought you were zeroing in on the gun, the weapon they did seize. The weapon that had no apparent connection to the crime at all, had no apparent connection to anything. They find it, they seize it. They didn't say, oh, this is not the weapon, I'm leaving it there. We approached Mr. Ramirez and they actually seized it. Yes, they seized that weapon, and they didn't say it's not the weapon, I'm leaving it there. After seizing it, they said it's not the weapon, but we took it anyway. And they shouldn't have taken it, because they knew it wasn't the weapon. It didn't look like the weapon at all. The .45 caliber ammo wouldn't have fit the sawed-off shotgun, right? Absolutely. .45 caliber ammo doesn't fit in shotguns. Correct, Your Honor. You can't fire .45 caliber ammo from a sawed-off shotgun. Our position is that this is similar to a situation whereby perhaps if the witness had said he tried to run me over with a Cadillac Eldorado, and instead of going to the house with a warrant to search for and seize a Cadillac Eldorado, the officers went for a search and seizure of all vehicles, and they ended up seeing a Volkswagen Bug, and they took that. It's apples and oranges. They knew what they were looking for, and they took something else. But, Counsel, you would concede that if at the time of the search the officer knew that Bowen was a convicted felon and reasonably believed that he lived at the residence, he would be entitled to seize the .45 caliber ammunition if he could tie it to Bowen, right? If he could tie it to Bowen and if he could exclude possession of it by someone else who lived at the house. The same thing with the weapon. I mean, just because there's a weapon or ammunition in a house where there are other people, and interestingly, this warrant affidavit, when you read it, you'd think it's pretty much just Bowen who lives there. It doesn't make mention that anyone else is there. But that becomes an item of proof at trial. It doesn't mean that there isn't a justification for seizing it if they're otherwise lawfully present with a warrant, does it? Isn't that what the Plain View Doctrine is all about? Yes, however, they'd have to be able to establish that it was Bowen's firearm and Bowen was- Well, ultimately at trial, if he's charged with possession of the ammunition, but the first thing you do is you seize the ammunition if you think that it might be tied to him, right? Yes, but you need the evidence to tie it to him. But you don't have to prove it at that point in the case. This is the investigative stage of the case. Right, but you do need probable cause to seize it. If its incriminating nature is inherent from what it is. And in this case, it's .45 caliber ammunition and felons aren't permitted to possess .45 caliber ammunition. Right, but there also has to be some support for the fact that he was actually in possession of it. It just doesn't sit there. Well, one thing you do with ammunition is you fingerprint it, right? But you can't do that unless you seize it. That's true, but you can't seize it unless you have some support for the fact that it's possessed by him, if indeed he's the person you believe is the felon. If you find letters that are written to him at that location, isn't that evidence that he is staying there? Not necessarily, no. The officers executing the search wouldn't have had to make that character because the warrant said they could seize any weapon. So they wouldn't have had to stop and ask the question, is it tied to him or is it not tied to him? Precisely, they went in over broad in the first place. That's all for your time. Thank you. Any more questions? Mr. Ramirez, I believe you have a minute and 20 seconds. You can take every one of those seconds. Thank you, Your Honor. I would draw the Court's attention to the Court's opinion by Judge Pragerson at Excerpt of Record 1683. It was an undisputed fact that Mr. Bowen was on summary probation. Also, I would draw the Court's attention to Excerpt of Record 137. That's the criminal history that was printed out by Deputy Messerschmitt on 10-20-03, three days after the assault upon Ms. Shelley Kelly. It shows four felony convictions, 11 misdemeanor convictions, four bench warrants had been issued for him, two arrest warrants had been issued for him. Mr. Ramirez, before you get on with that, let's assume hypothetically that you have a search warrant and one half of, say, there are four things mentioned. Two of them, absolutely no possibility of there being any probable cause based upon what's there. Two of them there is. Is the search warrant without probable cause for purposes of our case law? No. I think there's an issue of severability. If you take those two items out, you still have sufficient probable cause for the remaining items. And, yes, it's still a valid warrant. Okay. In our 1991 case, this is the grand jury subpoena dated December 10, 1987, we wrote that probable cause must exist to seize all the items of a particular type described in the warrant. Does that have any bearing on your response? I'm about ready to go over my time. If I could still take the time to answer. Oh, please do. Can you please rephrase the question, sir? Okay. The question is, in light of this case that I cited to you, we said probable cause must exist to seize all the items of a particular type described in the warrant. And I'm asking you whether the answer you just gave is affected in any way by that language. If you look at it from the deputy's point of view, that everybody approved it up the chain of command plus a DA and the judge, they reasonably had a right to believe that they could seize that evidence. It would be upheld. It would be a valid search warrant. That was standard in LA. Correct. I just had a question about summary probation. Yes. Is someone on summary probation subject to the same search clauses as someone who's on a regular probation? They would have the same terms and conditions as not to possess a weapon. Well, they don't report to probation officers. That's correct. So they don't have exactly the same terms and conditions. But your representation is the search clause would still be in effect. I think so. I think so sounds like I don't know. Do you know? You asked a question. You either know or you don't know. If you don't know, say I don't know. If we're not really asking for a guess here. There are going to be different terms and conditions for formal probation and summary probation. But the exact specifications are not the same. Did you hear Judge Rawson's question? Yes. Do you remember what it is? Yes. Okay. I don't know the exact differences. Is the answer yes, no, or I don't know? I do not know the exact differences between the two. So you don't know is the answer? Yes. Okay. Thank you. The case is argued. We'll stand some other way. Roger. All rise.
judges: Kozinski, Rymer, Silverman, Graber, Fisher